Mr. Smith, you may proceed. Mr. Justice Burke, Justice McClure and Justice Hudson, my name is Peter Smith. I am here on behalf of both Randall Coppert and myself as appellants. I have with me my partner Jeffrey Meyer. The appellee cross-appellant, and this is represented by Ian Hunter, and that appellee cross-appellant is Cassens Transportation Co. As a preliminary matter, I would like to thank the Court for its courtesy in rescheduling this oral argument. It's greatly appreciated. The nature of this case, Mr. Justices, is first a retaliatory discharge complaint having been filed in the trial court. Second, then, a motion for summary judgment having been filed. And Mr. Coppert has taken an appeal from the grant of the motion for summary judgment to Cassens Transportation and then the dismissal of his retaliatory discharge claim. Subsequent to that, Cassens filed a motion for fees and costs as a sanction under Rule 137. And the Court, after a full briefing, decided in favor of Cassens on that and made an award with myself, and that is also up on appeal. Now, Cassens in its cross-appeal is cross-appealing from the trial court's order in the sanctions matter with regard to the amount of the fees both within the initial case and then the fees with regard to the motion for sanctions and the amount there. The basic issues presented for review are broadly stated, whether the trial judge erred in granting Cassens' motion for summary judgment, and more specifically in that, first, whether the trial judge applied an improper standard in determining that there were no issues of material fact, and then also with whether the trial judge erred in that there were no issues of material fact in dispute. What improper standard? The trial judge did cite to Bush and Good, and you're indicating that that's not the appropriate standard. That's correct, Your Honor. But in Bush and Good, weren't they actually, I mean, the standard is, of course, no general issue of material fact being present. And when you boil this case down to what would the potential issues of material fact be, isn't that what those cases are talking about? I mean, Bush was talking about, you know, the person wouldn't have been fired but for the claim, and then Good talked about the pretext issue. So aren't those the issues that we're looking at to see whether there's an issue of material fact there? Those are the issues with regard to whether there would be a material fact, and those are the same issues that would be in all retaliatory discharge cases. But the standard that the appellate court used and the trial judge used the same language within his opinion is whether it was too speculative to justify a finder of fact in concluding in the face of uncontested evidence that it was more likely than not. And what that inherently does is allow a judge with only affidavits and not observing witnesses or taking actual evidence to weigh the evidence to determine what a rational finder of fact might conclude. And that is not the standard for the state of Illinois. And that's why I have argued that the standard that the trial judge applied is not a proper Illinois standard. Well, we review it de novo, so what's the difference? I mean, why? If the trial court looked at it one way and we look at it the appropriate way, why should we not find that Because, Your Honor, there are genuine issues of material fact. This is a situation... Counsel, the terminology is material issues of fact, not genuine issues of fact. Genuine issues of fact could easily be whether or not there were prior disciplinary actions taken, whether or not that relates to whether or not there are material is another matter. So what is or what are the material issues of fact that would preclude summary judgment from being granted? Well, Your Honor, the inherent issue within any retaliatory discharge matter is the motive of the employer in the discharge. And with regard to that, the facts that create the issues. Copper testified in his deposition that he'd completed a damage report and called his terminal manager before he was confronted by Mr. Allen with a demand that a damage report be prepared. And he describes the incidents as a self-defense touching, not harmful. Contrary to that, Allen, Terry, and Cepeda, who were the people at the terminal at that time, have different versions of the same story, but none of them describe a true battery. Well, can I ask you this? Because I mean, I think we're on the same wavelength, but let's talk about what I would characterize, and you tell me if this is not the case, as the uncontested, uncontradicted evidence. Would you agree that there was an incident, a contact between Mr. Copper and the co-workers? Is that in dispute, that he never put a hand on anybody? It is not in dispute. He didn't put a hand on anybody. We can agree with that. Is it clear and undisputed that Mr. Copper had prior documented disciplinary tickets and incidents? Is that in dispute? That is not in dispute. So does that not weigh against the plaintiff? It does weigh against the plaintiff, but even those prior disciplinary matters create an issue in this case with regard to the motive of Cassin's and his termination. Well, can I ask you this? And I like the logic of your argument, but that in any case, then, based on what you're saying, when you follow it through to its logical extension, there could never be a summary judgment motion on a retaliatory discharge because you could always say, you can't really discern the motive of the employer unless you would have tried it. How would you ever have a summary judgment motion granted or denied? You know, Your Honor, you really, I think, get to the practical part of this. And the practical part of this is that when you have a retaliatory discharge case, you almost never will have direct evidence. You will instead only have circumstantial evidence. In fact, the Michael versus Precision Alliance case that I cited says, the determination of the reason for an employee's discharge often relies on circumstantial evidence. The second case, Piotrowski, motive is a question of fact, generally inappropriate for summary judgment and retaliatory discharges. But here's what I'm struggling with, to be totally candid with you. In this case, we have something different. In this case, let's assume he had filed the workers' compensation case. It gets settled. And then months later, the company says, we're letting you go because we're going in a different direction or we don't need so many drivers, something general. You have a situation where the plaintiff admits putting his hands on a supervisor, which according to the collective bargaining agreement, as I was reading it, is grounds for termination in and of itself. You then have all of these preexisting disciplinary matters before this, which are not disputed. Some were after, some were before, but we have this. So you have factors here that you don't have in a lot of cases because the employer is saying, I have, quote, unquote, two specific, independent, legitimate grounds for letting this man go. Is that not correct? Can't the employer say that here? The employer can argue that, John, but the question is whether it's pretextual or not. Well, how could the touching of somebody, that's not pretextual, was witnessed and happened, you don't dispute it. He has the disciplinary tickets. That's not pretextual. He's got it. I guess I'm struggling with that. Well, first, with regard to the touching, there is a question as to whether that touching was a battery or whether it was not a battery, not an insulting touch. Well, didn't the firing get upheld? Didn't your client appeal that? He did go through the arbitration process with the labor union. I don't know the extent of the hearing in it. I do know that the decision that was made by the labor panel was that the discharge was upheld. Your Honor, with regard to that, the facts that I initially spoke of where there is a difference between what everybody says, you know, every touch is not a battery. Every touch is not an appropriate basis for discharge. For instance, the terminal manager, Mr. Zitt, was involved in a situation that he says, well, I touched him, but I didn't do anything really bad. But the gentleman who was touched says, I was knocked through the door and out to the railing on the outside. He was not discharged. Did you develop the record on that prior incident? Yes. So we know what Zitt's prior disciplinary background was? Yes. So any tickets that he had in the past were part of the record? With regard to that specific incident... No, I'm talking about before and after and things that the employer can take into consideration when deciding whether to discharge someone. I did ask him in his deposition with regard to his prior disciplinary history. And what did he say? And he said he basically had none. So here's a man who had none, zero, and potentially put hands on another employee. And then you have your client who has 23 who puts hands on another employee. A little different or no? It is different. At the same time, all of the prior matters that Mr. Coppert had were for things like arriving late with a load, for an accidental minor collision in a yard. And in the prior history, before the workman's compensation claim, before his injury, all of those were treated as minor matters. Well, wait a minute. For one of them, he caught three days off, didn't he? In the subsequent history? No, no. In one of the ones before. I thought in the 16 months he was employed before the injury, he had 11 disciplinary reports. In one of them, he caught a three-day layoff. Your Honor, your memory on that may be better than mine. I haven't looked at that in detail. I'll check the record. But my recollection is that before he was terminated, before the injury, before the workman's comp claim, he had one where he got a three-day layoff. And in the seven months after that, he had 12 disciplinary reports. And in one of them, he had a one-day layoff. So he had more days laid off before he got hurt than after. Your Honor, that may be, but that's not my recollection. Subsequent, he basically is charged for the same offenses with a higher charge and more severe discipline. Normally when these cases are prosecuted, the word pretext or pretextual appears. And usually that indicates that there's unequal treatment. Did you argue that this was pretextual because there were other people who committed assaults or who refused to file an accident report when, in fact, there was an accident? Even when they were admonished more than once who were not fired? Yes, Your Honor. We did argue disparate treatment. Did you? It's nice to argue it. Did you allege facts to establish that there was inconsistent treatment as between your client and some other party or some other employee? Yes, Your Honor. And that was done on information and belief. Your original complaint didn't mention anything about prior disciplinary acts, did it? I believe that it did, Your Honor. Were you given supplemental discovery which indicated that there were additional prior acts that resulted in disciplinary action? Yes, Your Honor, we were. Did you amend your complaint accordingly? We did not, Your Honor. And why didn't you? Your Honor, the order with regard to what had happened was Mr. Copper had come to me. We'd investigated. He had requested a copy of his personnel file. When he requested a copy of the personnel file, it came and it had no history of prior disciplinary action. Based on that, we alleged that there had been no history of prior disciplinary action. Three months after we had filed the complaint, Cassie sent another pile of disciplinary history, and this was the disciplinary history then prior to it. At about that time, we were beginning the process in Boone County Court. It had been filed in Boone County Court, removed to federal court, and then remanded to Boone County Court. And at that time, there was initial appearance and a request to amend, to add, I should say to subtract the word not in the addendum so that it would be an amount more than $50,000. And it should have been done at that time. It was not, and that was my mistake. I had not told my associate at that time, Attorney Meyer, that it needed to be done. He prepared the motion to amend the complaint by striking the word not so that it would be an L case rather than an LM case. And subsequent to that, in discovery, I produced all of those documents to Cassie's. Cassie's produced all of those documents to me. The deposition was held. All of that prior disciplinary history was fully reviewed in the deposition. And it was my intent, after the close of discovery, to see what all of the changes would be so that I could make one amendment to the complaint in order to take care of these things. Before I was able to do that, after the close of discovery, Cassie's filed this motion for summary judgment. Let me ask you this, Mr. Simmons-Kamenly. I mean, from what I'm hearing as you're saying, this was the failure to amend, as you'd now concede should have been done, was done due to inadvertence or oversight as opposed to intentional or willful, correct? Correct. But does the purpose of the rule in this, does the case law let an attorney off the hook under those circumstances where it's done through negligence or inadvertence or oversight versus willfully? It does not. However, where there has been no harm done, where there has been no fees, additional fees incurred, and where it is not a cornerstone allegation, the law, as stated by the second appellate district here, basically is that there should be no sanction awarded. In the Patton v. Lee case, it indicates the complaining party may seek only those costs and fees which have a direct connection to the sanctionable pleadings or statements. And a party seeking an award has the burden of establishing that he actually incurred fees and expenses by reason of the untrue pleading. He did incur fees and expenses to prosecute the 137 motion, though. That was like $8,000, correct, or a little more than that? Your Honor, that's the amount that was awarded by the court. The actual amount that was claimed was $31,000. And it's our position, basically, and I believe that the case law supports this, that if there's been no fees incurred in the underlying case, that that is an element of the sanctions, an element of proof that must be made. And if it's not made, then the motion for sanctions should be denied. And if it is denied, there should be no award with regard to the motion itself. Mr. Smith, let me ask you this. I'm getting back to the—and I know that the time has run out of your initial argument—but getting back to the issue of the summary judgment. As I understand, the workers' compensation case was settled at some point, correct? Yes, it was. It never went to a full hearing before the arbitrator and the commission, is that correct? I believe that's correct, Your Honor. How long after the case was settled did this incident take place that eventually, ostensibly, led to his discharge? As I recall, approximately 40 to 45 days. Almost two months later? Correct. And during that period of time, there were two other violations that he was cited for, and then this. What were the two violations? I don't recall, Your Honor. Well, it might be relevant because, you know, whether or not they appeared to be pretextual or legitimate would bear any analysis, wouldn't it? Because you're saying this whole thing was a pretextual pattern and he got rid of them after he filed the capital. That's correct, Your Honor. You don't recall what they were for? I do not. I believe they were minor cargo damage and a delay of load reprimand, which, you know, if he had been fired for one of those, maybe you'd have a, you know, a little better case to be talking about pretext. You know, he gets this Fort Wisconsin settlement and then has a minor cargo damage and then he's fired for that. But when he's fired for laying hands on another employee, which is a fireable offense under the CBA, you know, then your hill's a little higher to climb. It is a higher climb, Your Honor. And at the same time, Mr. Copper testified that after his non-insulting touching, the employee supervisor ran away saying, I've got you now, you mother, and you can finish the phrase for that. And that creates an issue as to what was really going on at that time. All right, Mr. Smith, you will have time for about a lot of questions. I have one or two more questions, if you don't mind. You indicated that you don't think that the assessment of fees is appropriate because there's been no damage. And you make argument that the information that you didn't include in your complaint is germane to the basic principle as to whether or not this was pretextual and whether or not you could arguably sustain a cause of action. Well, it's difficult for me to understand how factual allegations that are improperly pled, which you claim are supposed to support your contention that summary judgment should not have been granted, but opposing counsel and the opposing party were not damaged by because they supposedly, for some reason, were not required to rebut, refute, or controvert what you claim should have resulted in at least a denial of their motion for summary judgment. Could you explain to me this seeming contradiction or paradox that you're claiming that they're not damaged, they're not burdened by having to establish facts that would refute your basic claim, which you indicate is what should have resulted in a denial of a motion for summary judgment? Well, Your Honor, they knew from the very beginning what the facts were with regard to the prior disciplinary history. In fact, it was because they hadn't turned over that prior disciplinary history that those allegations were made. At no time did I contest, after we received the information, that prior disciplinary history. We gave it in discovery, they gave it to us, it was fully discussed. And at no time was there either a request to me to remove those allegations, there was no motion to strike, there was no motion to strike and dismiss. You're placing a burden on the defendant when you're essentially not arguing but are implying that your client is forgetful and can't remember the ongoing antagonisms between the defendant and your client. In my everyday experiences in life, I believe that an employee who is having disciplinary problems over a long period of time, were they to confide in their attorney, they would have probably have said something to the effect, this is what they sent me, but I know it's not true because I know that we've been fighting back and forth for years. So you are deflecting my question by suggesting that your client either has Alzheimer's or is incompetent of having any competent memory that would suggest that the information that was sent to you was not true. Your Honor, the conversation that you've suggested never happened. And, Your Honor. Well, if it never happened, maybe it's not your fault. Maybe you shouldn't be sanctioned unless, of course, you asked. Well, no, even if you asked and he lied to you or conflated, but it's hard for me to accept the argument that you're making, which is that your client didn't know that there were other things in the closet. And that he supposedly was taken aback, essentially, and should have been surprised had he gotten the new information or the information and would have looked askance and said, this never really happened. Your Honor, when I interviewed my client, I was skeptical. I don't want to hear about what you do when you interview him because I think that's an attorney-client privilege. I understand, Your Honor. But I would simply say that I was skeptical. That's why there was a request for personnel records to Cassings. And Mr. Copper suffered a substantial back injury. And over a period of 14 months, he was heavily medicated. He went through two operations and was medicated after that. I've had the personal displeasure of having three broken vertebrae and five broken ribs. I've received medication for that, Vicodin, a morphine substitute that just made me happy as a clam. And I can tell you that despite the severe pain I was having, I had to stop taking it after seven days because my brain was so scrambled, I couldn't function, I couldn't work as an attorney. He went through that for 14 months. I have no further questions. Anything else? No. All right, counsel, you will have time for rebuttal argument. Mr. Hunter, you may proceed. Your Honor, may I still have five minutes of rebuttal? You will have rebuttal. Thank you, Your Honor. Please, the court, counsel Smith and Meyers, I appear today on behalf of Kasson's Transport, the appellee, and the cross-appellant in this matter. As an aside, I certainly understood the court's willing to postpone the argument of next week for the reasons stated, and I commend it for doing so. Unfortunately, when they rescheduled it to today, it happens to be my wife's big birthday, so I am now in, hopefully, all right with the court, but my wife is somewhat concerned in my absence. We'll send you a note. So are you saying we got you out of the dark house? Yes. Anyway, as you can imagine, when one confronts the need to argue in a case which, in effect, although one appeal is really three appeals plus a cross-appeal, it was a little difficult anticipating what it was I should be highlighting for the court's benefit in light of the multiple issues and somewhat different issues involved in each. Well, I think the transcending thing, do you want to comment on, obviously, the overarching issue is the propriety of the trial court's granting of the summons? That's what I anticipated, and I was going to lead off with that. And you covered many of the issues, but I would like to emphasize a couple of points. Now, one must recognize that this motion for summary judgment was issued many, many, many months after the case was initially filed. And, of course, even delayed further because of a remand, a petition to remove, it was remanded, so it was a year of non-activity. But at that point, the discovery began consisting of ten depositions, nine of which were scheduled by the plaintiff, only one by the defendant, requests for admission, production of documents, et cetera. So when the court made its decision, it's not like this was a motion on the pleadings. This was a motion that was reviewed in the context of a relatively extensive record. Now, what's this record tell us? Well, it tells us that the plaintiff alleged in his pleading that he was an employee of Kazin's, he filed a workers' comp claim, and he was terminated. Well, he's got two of the three points. But the law says in Illinois that there must be a causation or linkage or nexus between his discharge and the fact he filed a workers' compensation claim. Now, we begin with the fact that the plaintiff concedes from the outset. There's never any evidence, direct evidence, that Kazin was motivated by this workers' comp claim. Rarely is there, which is why it's usually a question of fact. That's right. But the plaintiff frames two issues in his complaint that is the circumstantial evidence basis for his contention. Indeed, he was retaliated against. One is that he was an exemplary employee. Three minor offenses in the many years of employment with the company. I know that that's not true. When the court makes its decision, that's obviously not true. Then he says he was treated disparately from others who assaulted someone but who had not filed a workers' compensation claim in advance, and they were treated differently. This record is void of any person who told him that, and even now he has no personal knowledge. I don't know where this came from. He names Adamic, Dobbs, and Zitt as three examples. The plaintiff scheduled Adamic's deposition. Adamic says, I filed numerous workers' compensation claims. Plus the fact there's no evidence he actually assaulted anyone. Dobbs, there's nothing whatsoever in the record that was produced by the plaintiff. And in Zitt's case, he filed a workers' compensation claim. So the three people he purports to be evidence of the disparate treatment, it doesn't compute. Even so far as the affidavit submitted by Mr. Meyer, where he says he talked with some people in advance of filing the complaint, he doesn't identify anyone who's told him that the plaintiff was treated disparately. There's no basis for this. Could the trial court have said it better if it had said something to the effect that the defendant hasn't arguably presented a primate patient case? Well, it might have been better, but it did make a number of these findings in the context of its motion for summary judgment. Well, he seemed to say something to the effect that there's insufficient evidence that would require one to speculate as to whether. Believe me, this suggests that that's what the plaintiff wanted, speculation, because he doesn't appear to have any evidence in advance of filing a complaint, let alone during the months that transpired before the motion was sustained. My point is that the standard or the burden of proof, if you file a motion for summary judgment as a defendant, is that the plaintiff has to arguably establish a primate patient case. It has nothing to do with whether or not it's speculation. You don't have to prove that it's speculation. It may be speculation, but you don't have to prove it. So my point is that the terminology is not kosher. It's not orthodox. Would you agree with that? I would agree with that, apparently, based on your much greater knowledge. I don't know that it's much greater. Anyway, the allegation that he couldn't remember because of his medical condition, again, there's no support in the record for that. There's nothing whatsoever to support the fact that he must have been released to work under the DOT medical regulations when he came to work in June of the year before he was terminated. So I don't – his memory – not only does he deny that – not deny in the complaint, he ignores the fact he was issued these. The deposition says that he was a little disingenuous. He would identify his signature or his initial, but he couldn't remember anything about it. At the same time, he says he got so many of them that he refrained from protesting them. All right, let me ask you this. He has alluded to the touching was a result of his self-defense. He admits he touched a co-worker or a supervisor, but he was doing it out of self-defense and not because he was assaulting a co-worker. What does – what do the collective bargaining rules say about putting your hands on a co-worker? Does it distinguish between self-defense, assaulting somebody, or is it prohibited in general, period? It's a per se dischargeable offense under the agreement. Under this particular agreement, assault has to be physical. It can't be verbal. So in this case, the company was arguing that he physically assaulted him, and he admits that he touched him. I mean, that's assaulting with – I mean, battery within the meaning of the law. And it's corroborated by two other witnesses, one of whom is not a Kessler's employee. It was at the workplace. It was a dispute involving a workplace incident. It's the kind of thing that employers frown upon, justifiably so. And it was the sole motivation based – that's what it said at the arbitration hearing. That's what it said to the Unemployment Commission. That was the reason they terminated him. That's not protectual. That's a legitimate, non-protectual reason. Although it's not technically a part of this case, both the arbitrator on the collective bargaining agreement side and the Unemployment Commission found that it was proper discharge. Yes. Okay. Now, recognize that we also lingo the Supreme Court case. It has eliminated the employer's ability to argue that's any kind of a breach to the patent. But it's certainly evidence of motivation. I mean, it explains what the employer was thinking when it was doing it. It doesn't dispose of the case per se like it used to, but that's the way it is. What about your cross-appeal on these fees? Okay. There are two aspects of our cross-appeal, and I concede the awkwardness of my argument because I'm arguing in the context of the motions for sanctions that the standard of review is abuse of discretion. And therefore, no, if any reasonable man might agree. Right. It's a pretty high hurdle. So now I come in the back door and say it was abuse of discretion. Why do I say that? The first time is the motion for sanctions or attorney's fees. We provided the court with the billing statements, which reflected the nature of our activity, exclusive of the removal and the remand activity that was taken during the course of defending this case. In the absence of direct evidence, obviously our attention was drawn to, one, his exemplary employment record and the disparate treatment, which I think, by the way, the court could have found sanctionable but it didn't. It didn't find one way or the other. So the court says in reading these attorney's fees that they couldn't find anything linking what we did on behalf of Kasson's to the sanctionable contact. Well, the sanctionable contact was the untrue allegations, and the unsupported evidence is the disparate treatment. What were we doing? What were we doing? But the untrue allegations, you had all the documents. You knew they were untrue. We thought they were untrue. Did the plaintiff remove them? Did the plaintiff? You look at the deposition. He never really concedes anything. He couldn't remember and so on and so forth. And the request for remission. We had to file a request for remission. So your argument is that, like some of the cases, Diane and Rios, that those untrue allegations were the cornerstone of the complaint. Well, that was the only thing that's left. The circumstantial evidence was the sole basis by which the plaintiff intended to prove this case. And that's all we were doing is refuting that. We were getting ready for nine depositions to see what they would bring up to prove these either false or unsupported allegations. And the court disrejects that in reducing our fees to the inexorable at zero. And it worked $5,000. Did you move to dismiss this complaint on that basis before you did nine depositions and before you incurred $116,000 in fees? Did you move to file a 615 motion to dismiss saying we have the records, this is false? Well, we did not because that was one level of the thing, that disparate treatment was the other. No, we did not. But that becomes the paradox and the problem. The trial judge, it appears in the record, was trying to pin down, to the extent that he could be pinned down, what efforts you expended in responding to the false allegations as opposed to the general course of litigation. And it seemed like he couldn't get an answer from the defense to that question. We did not elect to take away the court's ability to look at the pleadings of it at the time, at the attorney's case. We did not. That's not having said that. I don't know if you answered Justice Hudson's question. I mean, I think the question is, didn't the trial court prod you to tell us, please tell me how much time you spent responding to these allegations? He did. And we said it's up to you, Your Honor. But we thought the documentation supported the fact. What else were we doing but that? But now, there's the paradox in the second round. In his order finding sanctions in the 5000, he says you're also entitled to the regional attorney's fees incurred in preparing, presenting, and filing this motion. So we proceed and provide him that information. Now, all of that on its face related to that very function. The trial court in this instance then reduces that substantially on the basis that, well, you used too many attorneys. Well, the review of the billings show that one attorney and one paralegal were the vast majority of the activity. It wasn't like we duplicated efforts between two law firms. You were seeking $31,000 in fees for prosecuting the 137 motion. And certainly the court couldn't say he couldn't file it, which was linked to our activity. It was an entire amount. Yeah, because the court was sitting and hearing this. The court didn't sit in on all your depositions and all that as far as coming out of the case. That's on round one. I understand that. The court's actually sitting on the motion that you filed and knows how much work reasonably would have gone into that motion. Yes, and I have a feeling, and again, Mr. Smith's a very nice man. I mean, he's a very good attorney. And I suspect there was a little hesitation to hammer a reputable attorney. But for heaven's sakes, what is Cassius to do when it's being forced to make these expenditures to support his position? And then given the opportunity. If in fact Diane and Rios don't apply, if in fact Patton versus Lee applies, and by that I mean if we agree with the trial judge or we say that the trial judge didn't abuse his discretion in finding that, making the findings that it made, how do you prevail on the $8,000? Because counsel's arguing that if Patton versus Lee applies, you didn't show what fees were in response to these false allegations. That's an element of a 137 claim. And if you don't prove the 137 claim, you don't get your attorney's fees. Well, my understanding is the court, in issuing its finding of sanctions, says, well, by the way, defendant, you are entitled to the reasonable attorney fees incurred in presenting this motion. Well, we didn't. He did prevail on the sanctions. Now, granted, he didn't give us all the attorney's fees, but he filed sanctionable conduct. He filed sanctionable conduct, and then he entered what appears, at least to me on the face, or at least counsel's arguing, to be an order in violation of Patton versus Lee. And he basically said, I'm not going to give you all the fees because I don't find that this was the cornerstone of the case, but this was egregious conduct, so you should get something. So I'm going to impose, in essence, a fine. I mean, didn't the court kind of pick this number out of thin air, 3,500? It must have because it didn't come from us. Right. It didn't come from anywhere. The court just basically said, I'm going to impose a fine. And for the reasons it stated. And, for example, the court in neither case, in either instance, looks at the various factors that were in what's the name of the case. I can't find it. It's in my brief, which there are eight factors or so that the trial courts asked to review when making this assessment. And the only one that it looked at in the second round was the fact that there were too many attorneys. When, in fact, had it examined the billing statements, it would have realized that a substantial part was done by one attorney and one paralegal. So it wasn't like they were, you know. And the other was by a local counsel, which we were using because we didn't want to go too far afield from the local rules without knowing that we were doing it. So I thought that you can't, on one hand, justify what they did on the other and then say it's also a basis for rejecting or diminishing the attorney's fees. The other one, when everything was related to the very issue involved. That is, preparing, presenting, and filing the motion for attorney's fees. Final question. Is your office in Troy, Michigan? Pardon? Where's your office at? Troy, Michigan. How far of a ride is it from here, from Elgin? To Troy? Yeah. A ride, it would be hours. I flew. Okay. Have a safe and expeditious swift trip back in light of the pending birthday celebration. Pardon me? Have a swift and an expeditious return, safe return, back to Michigan in light of the birthday celebration. Indeed, because I'm not necessarily looking forward to it. Mr. Hunter, I have a few questions. Thank you. How long was the deposition for Randall Copper that you took? I'd say six hours. Six hours? How long did it take you to prepare and file and argue the motion to request admissions? You mean the second round? Well, it took whatever, I think our fees, my fees were like $26,000. We had to go review the record, et cetera. So, again, my rate is considerably lower than the person of my, I think, field. Well, you had to ask questions at the dep. Pardon? You had to ask questions of Mr. Copper at the dep. about his background. Even though you had the record, you also had a complaint that was verified or certified. That's right. So there was some energy expended by you to counter these false claims. And as I pointed out in my brief, maybe a remand to the court for a review of whether or not that was a little too extreme and reducing it would be in order. I have no further questions. Thank you, Mr. Hunter. Thank you very much. Mr. Smith, you may proceed with rebuttal. Considering the court's questions of Mr. Hunter, one of the things that I would point out is the trial judge, in his opinion, specifically stated and found that the allegations complained of were not the cornerstone of Copperett's cause of action and that there was no causal relationship between the act complained of and the attorney's fees and costs requested. Justice McLaren has asked about the time he spent in deposition. There's a three-hour limit on depositions in the state of Illinois, at least to my recollection. Six hours would be wrong. There was only a small portion of that that dealt with the prior disciplinary history. That disciplinary history would have been inquired into regardless of the allegations because those things were known and had been disclosed. They were simply a part of the case. To sort of switch back to the motion for summary judgment. Going back to the sanctions a little bit, didn't the trial court in essence find that this was not a de minimis violation? I understand your argument from Patton and the $3,500 and $1,500 seemed to come out of nowhere, but the trial court on one hand found that it wasn't the cornerstone under the case law, but then on the other hand clearly found that it wasn't a de minimis violation. Your Honor, I don't recall the word de minimis being used in the opinion. I know that because of his decision, you'd have to conclude that it wasn't de minimis, but I don't think he ever specifically addressed it, at least to my recollection. The essence of a sanctionable situation is an egregious situation involving pleadings to harass, not the case here, or to cause unnecessary delay, not the case here, or needless cost of litigation, not the case here. One that involves bad faith, also not the case here. With regard to, you know, these are cornerstone and motion for summary judgment are to some extent two sides of the same coin. The two theories were basically discipline and disparate treatment. And when you're talking about 137 sanctions, I mean, it's not just a bad faith issue. It's not just, you know, harassment and unnecessary delay and needless increase in the cost of litigation. I mean, that's the second prong. But the first prong talks about when a pleading or motion or other paper is not grounded in fact or is not warranted by existing law or good faith argument for the extension or modification of that law. I mean, the issue in this case is whether the complaint was grounded in fact. At the time that it was initially pled, it was because there had been no turnover with regard to the prior history. I'm talking about from your perspective, maybe, but from your clients also. I believe from my clients also. He certified that document to say he had no prior disciplinary issues. He did sign a charge. And so you're saying that that's still OK, even though he signed an initial some 12 or whatever disciplinary issues before he filed that complaint. Your Honor, for better or for worse, my client relied on what Kansas had produced and what I had seen and what I then produced as a pleading. So your client has no obligation to read the pleading and certify. No, he does have an obligation to do that. But he also was relying on me and he was relying on the turnover from Kansas. And he had impaired memory. Was it reasonable for him to do that under the circumstances? Your Honor, I would have to argue yes. Well, I don't know that that's the standard on review. I think the standard on review is whether or not the trial court's finding that what he did was unreasonable is against the manifest way to the evidence. We're not trying to do that. We're not supposed to weigh the evidence. And that's essentially what you were arguing when you said what you just said to us. So tell me why what the trial court's findings were against the manifest way to the evidence. And we should find that they're clearly erroneous and we should disagree with the trial court. Your Honor, the essence of the argument with regard to the trial court's determination on sanctions is that even though there were no damages shown by Mr. Kansas, the defendant found after his own extensive review that there had been no damages. He then came and awarded a sanction and awarded amounts, amounts that had no relationship to what had been done by the defendant in this case. The defendant argues that, well, he incurred attorney's fees with regard to the request to admit, you know, that request to admit what had been done, whether the allegations were there or not, because of their knowledge and because of our turnover in discovery. We'd like to thank the attorneys for their arguments today, and the case will be taken under advisement where adjourned. Thank you for your time, Your Honor.